[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The parties before this Court in the above-entitled action seek a declaratory judgment under Rhode Island G.L. 1952 as amended, Chapter 9-30. The issue in dispute involves the proper applicability of certain provisions of R.I. Gen. Laws (Reenactment 1984) §§ 34-36.1-1.02 through 34-36.1-3.21 in governing the rights and obligations of the parties.
Defendants Neil Rostoff and Richard Rostoff (Rostoff) are the current owners of condominium unit 6B located at 1143 Hartford Avenue, Johnston, Rhode Island. Defendant James Harris (Harris) is the current owner of condominium unit 8B located at 1145 Hartford Avenue, Johnston, Rhode Island. Both units 6B and 8B are subject to the rules and regulations as set forth in the Woodland Estates Condominium Association's (Woodland) Declaration of Condominium, recorded in 1985.
On February 6, 1986, both Harris and Rostoff executed promissory notes in separate transactions with Commonwealth Mortgage Company (Commonwealth), each in the amount of $47,900. Harris and Rostoff granted first mortgages on their respective condominium units to Commonwealth as security for the promissory notes. Commonwealth subsequently assigned both mortgages to plaintiff Crestar Mortgage Corporation (Crestar).
During the six month period from May 1991 through October 1991, Rostoff was delinquent in paying the monthly condominium assessments to Woodland. Over an eight month period from March 1991 through October 1991, Harris also was delinquent in paying the monthly condominium assessments to Woodland. Woodland unsuccessfully attempted to collect the delinquent assessments from both Harris and Rostoff on several occasions.
After failing to collect the delinquent assessments, Woodland exercised its right of foreclosure pursuant to R.I. Gen. Laws §§34-36.1-3.16 and 34-36.1-3.21 (Supp. 1991) against Harris and Rostoff respectively. Woodland properly notified all interested parties in accordance with the requirements of § 34-36.1-3.21, including Crestar, the owner of the first mortgage. On October 29, 1991, Crestar filed the instant declaratory judgment action seeking clarification of the parties' rights under the relevant provisions of §§ 34-36.1-1.02 through 34-36.1-3.21. On the very same day, Crestar also sought a temporary restraining order prohibiting Woodland from foreclosing. Mr. Justice Krause denied Crestar's motion for the restraining order. Crestar and Woodland subsequently agreed to stay the foreclosure proceedings pending a decision from this Court.
Woodland's position is that § 34-36.1-3.16 entitles it to recover all delinquent condominium assessment fees, attorneys' fees, and legal advertising costs relative to the units owned by Harris and Rostoff. Woodland further contends that the aggregate of these claims is entitled to priority over Crestar's prior recorded first mortgage. Conversely, Crestar contends that Woodland's lien for assessments is entitled to priority over the first mortgage only to the extent of common expense assessments due in the six month period immediately preceding the foreclosure petition. Crestar asserts that Woodland's claim for attorneys' fees and legal advertising costs incurred in the collection of delinquent assessments is subordinate to the first mortgage. Crestar finally argues that any foreclosure proceedings initiated pursuant to §§ 34-36.1-3.16 and 34-36.1-3.21 may be accomplished only through judicial foreclosure, which will not extinguish its prior recorded first mortgage.
A significant portion of Crestar's argument focuses on whether § 34-36.1-3.16 should apply retrospectively to events and circumstances occurring after July 1, 1982. Crestar argues that Woodland's rights are governed by the statutory provisions existing prior to the January 1991 amendments since, contrary to the statute's clear and unambiguous language, the General Assembly did not intend for the amendments to apply retroactively.
At the outset, it is important to note that the General Assembly again amended the disputed statutory provisions during its January 1992 session. See 1992 R.I. Pub. Laws 8. Although it is clear that the recent amendments do not apply retroactively to this cause of action, they are nevertheless helpful in interpreting the provisions now in question.[1]
§ 34-36.1-3.16 LIEN FOR ASSESSMENTS
Section 34-36.1-1.02 establishes the circumstances under which § 34-36.1-3.16 applies under the 1991 amendments. The statute specifically states that § 34-36.1-3.16 applies to all condominiums created after July 1, 1982 with respect to events and circumstances occurring after July 1, 1982. Although the General Assembly has had ample opportunity to amend this language through either the 1991 or 1992 amendments, the language has remained the same since the statute's inception.
It is well established that when the language of a statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction exists. O'Neil v. Code Comm'n,
534 A.2d 607, 608 (R.I. 1987). Under such circumstances, the reviewing court must interpret the statutory language in accordance with its plain and ordinary meaning. Id. A careful reading of the applicable statutory sections satisfies this Court that the General Assembly intended § 34-36.1-3.16 to apply to all events and circumstances occurring after July 1, 1982.
Crestar submits that the inclusion of the language "but only with respect to events and circumstances occurring after July 1, 1982" was the result of legislative oversight since the same language appeared in the statute prior to the 1991 amendments. This argument is without merit. With the same language appearing in all versions of the statute including that of the 1992 amendments, the only conclusion this Court can reach is that the General Assembly specifically intended § 34-36.1-3.16 to apply prospectively from July 1, 1982.
Section 34-36.1-3.16 establishes a lien against condominium units on behalf of the condominium association for common expense assessments. Unless the condominium declaration otherwise provides, attorney fees, charges, late charges, fines, and interest are also enforceable under the assessment lien. Although the condominium association is entitled to an assessment lien for the charges described above, § 34-36.1-3.16(b) establishes the priority of such liens as follows:
 The [assessment] lien is also prior to [first mortgages] to the extent of the common expense assessments based on the periodic budget adopted by the association . . . which would have become due . . . during the five years immediately preceding institution of an action to enforce the lien.
Woodland argues that its liens for assessments against the Harris and Rostoff condominiums include condominium assessments of eight and six months respectively, attorneys' fees, and legal advertising costs. Woodland contends that it is entitled to priority over Crestar's first mortgage for each of these amounts. Crestar, on the contrary, first argues that liens for assessments are not entitled to priority over prior recorded first mortgages. In the alternative, Crestar submits that even if the liens are given priority, foreclosure by the condominium association will not otherwise extinguish the prior mortgage.
The issue of priority encompasses both the type and extent of assessment lien charges entitled to priority over the first mortgage. First, § 34-36.1-3.16 clearly and unambiguously grants the condominium association priority over the first mortgage for certain assessments. While it is true that § 34-36.1-3.16(a) establishes a lien for assessments for common expense assessments, attorneys' fees, late charges, and interest, §34-36.1-3.16(b) clearly provides that only those charges for common expense assessments based on the periodic budget are entitled to priority over prior recorded mortgages. A condominium association, therefore, is entitled to priority only for common expense assessments that became delinquent within the five (5) years immediately preceding the date of foreclosure.
In the instant action, the statute entitles Woodland to a lien against the Harris and Rostoff units for the common expense assessments of eight and six months respectively, attorneys' fees, legal advertising, and interest. However, § 34-36.1-3.16(b) limits the priority of such liens over Crestar's first mortgage only to the delinquent common expense assessments of $1,070 for the Rostoff condominium, and $1,438 for the Harris condominium. Woodland's lien for attorneys' fees and legal advertising costs is not entitled to priority.
The final issue is whether the condominium association's power of sale under § 34-36.1-3.16 would, if exercised, extinguish the rights of all subordinate lienholders. Section34-36.1-3.16(a) provides that the association's lien may be foreclosed in the same manner as a mortgage on real estate containing a power of sale, without the necessity of judicial approval. Notwithstanding Crestar's public policy arguments, the General Assembly intended for condominium associations to have a power of sale to foreclose assessment liens similar to the power of sale ordinarily possessed by a real estate mortgagee. Similar to the result when a mortgagee exercises a power of sale, the power of sale under § 34-36.1-3.16(a) will operate to extinguish all subordinate encumbrances. Crestar, however, may protect its interest in the condominium units simply by purchasing Woodland's lien.
Based on a review of all the applicable law and the parties' memoranda, this Court finds that the 1991 amendments to §§34-36.1-1.02 through 34-36.1-3.21 apply to this cause of action. The Court finds that Woodland's lien for assessments is entitled to priority over Crestar's first mortgage only to the extent of common expense assessments based on the periodic budget. Any foreclosure action by Woodland pursuant to the power of sale under § 34-36.1-3.16(a) will operate to extinguish all subordinate encumbrances.
Counsel shall prepare an appropriate judgment for entry.
[1] The 1992 amendments primarily affect §§ 34-36.1-1.02
(applicability), 34-36.1-3.16 (lien for assessments), and34-36.1-3.21 (foreclosure of condominium lien). With respect to §34-36.1-3.16, the amendments took effect upon passage of the act and have no retroactive application to the case at bar.
The 1992 amendment to the applicability section (§34-36.1-1.02) established new parameters for the applicability of only § 34-36.1-3.21 (foreclosure of condominium lien). The amendment provides that § 34-36.1-3.21 applies to condominiums created prior to June 19, 1991, but only with respect to events and circumstances occurring after June 18, 1991. The General Assembly then amended the foreclosure procedures embodied in §34-36.1-3.21.
While it would appear that the amendments to §§ 34-36.1-1.02
and 34-36.1-3.21 would apply retroactively to this cause of action, the Act specifically addresses the issue of retroactivity. Section 2 of the Act specifically states that while the amendments to § 34-36.1-1.02 shall apply retroactively to June 18, 1991, the amendments to § 34-36.1-3.21 shall apply only to foreclosure sales by the association for which notice is first published after the effective date of the Act. Since Woodland first filed notice of foreclosure prior to the effective date of the Act, the 1992 amendments are inapplicable to this cause of action.